## GALVAN v. PRESS.

No. 13339.

United States Court of Appeals
Ninth Circuit.

Jan. 9, 1953.

Rehearing Denied March 9, 1953.

Sweet, Ault & Warner, San Diego, Cal., for appellant.

Walter S. Binns, U. S. Atty., Clyde C. Downing and Robert K. Grean, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant Galvan, an alien, was arrested and, after a hearing, was ordered deported.

He sought release from custody by petition to the United States district court for the issuance of the writ of habeas corpus. An order to show cause was issued and, after a hearing, the petition for the writ was denied.

Appellant, a native of Mexico, entered this country in 1918 and, except for a few legal visits to Mexico, has been in and has resided in the United States ever since.

On the 17th of March, 1948, upon his return from Mexico, appellant gave a statement under oath to Immigration Inspector Oral K. Chandler in which he admitted that he had belonged to the Communist Party, had attended Communist meetings, but that there had been no talk in the meetings of overthrowing the United States government by force or violence. He stated that he had dropped out of membership through lack of interest. He further stated that he had not applied for naturalization because he feared membership in the Communist Party might be revealed.

A supplemental statement which was given on March 31, 1948, reaffirmed the contents of the first statement and contained the additional information that appellant went to a book store where he read or partially read or received for distribution among members of the Party books treating of Communism. Some of the books were entitled "The Communists in Action"; "The Communist Manifesto"; and "The Struggle Against Imperialist War and the Tasks of the Communists".

On August 13, 1948, a few months after the statements had been given, appellant was arrested on a deportation warrant under the Act of October 16, 1918, 40 Stat. 1012, as amended, 8 U.S.C.A. §§ 137(c) and (g) which charged that appellant was a member of and affiliated with an organization, society, or group that teaches overthrow of the United States government by force or violence. After the arrest, there were hearings before three different presiding officers: One on March 10, 1949, one on January 12, 1950, and the final one on December 12, 1950.

The March 10, 1949, hearing was before Inspector Vincent A. De Lucia. The session was short and little was done in addition to explaining to the alien and his attorney the purpose of the hearing and the alien's rights.

The January 12, 1950, hearing was before Inspector Phil Hamilton with appellant and his then attorney, John W. Porter, present. After formal questions, Attorney Porter moved for the dismissal of the proceedings or in the alternative for the designation of an independent examiner in accord with the Administrative Procedure Act of 1946, 60 Stat. 237, c. 324, P.L. 404, 5 U.S.C.A. § 1001 et seq. The motion was denied and the hearing proceeded. Appellant was shown the written statement made to Inspector Chandler on March 17, 1948, and he then and there admitted that the signature thereto was his own. The statement was admitted in evidence. Appellant was then asked as to his membership in organizations and, upon advice of counsel, he refused to answer upon the ground that his answer might incriminate him. The examining Inspector then went through appellant's written statement which had been given to Chandler and questioned appellant in detail as to his connection with Communists and the Communist Party. To each such question appellant refused to answer on the ground that his answer might incriminate him. Mr. Chandler was then called and sworn, and he testified that he took the statement of March 17, 1948, and the "Supplemental Statement" of March 31, 1948, and that each statement had been subscribed and sworn to by appellant.

Mrs. Jona Cooley Meza was then sworn, and she gave testimony directly implicating appellant as a member of the Communist Party. She stated that she had attended Communist meetings with him. The hearing was adjourned and nothing further was done until nearly a year later.

Meanwhile, on February 20, 1950, the case of Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, was decided by the Supreme Court which effectually nullified the proceedings above outlined, since it was held therein that deportation hearings

must be held in accordance with the Administrative Procedure Act of 1946. Still in the meantime, Congress, feeling that deportation·hearings should not be governed by the. Administrative Procedure Act of 1946, passed an Act on September 27, 1950, 64 Stat. 1048, exempting· deportation proceedings from the Administrative Procedure Act of 1946.

The ground was now cleared for the resumption of hearings under the old, now re-established, procedure and the hearing was begun de novo on. December 12, 1950, this time before Hearing Officer Raymond M. Tong, with Examining Officer De Lucia. Appellant was represented by Attorney Henry W. Hache. After preliminaries, the following proceedings took place: ·

"By Hearing Officer to Counsel:

" *      *      *      *      *      *

"Q. Counsel, may I ask: Have you reviewed the testimony which has been taken [as hereinabove outlined] in this case? A. I have.

"Q. You are then aware of the charges under which the respondent is subject to deportation? A. I am.

"Q. The Examining Officer has informed me that you and he have agreed that the testimony which has been given in this case, together with exhibits, might be entered of record at this time and made part of this present hearing and used in arriving at a decision of this case. Is this your desire, Counsel? A. With this one proviso: That I have the right to put him on the stand and ask him questions in rebuttal.

"Hearing Officer to Examining Officer:

"Q. Is that in accord with your desires, Mr. De Lucia? A. That is so; and for the record I might state that the oral agreement covers the record of hearing held at San Diego, California, on March 10, 1949, * *

and the record of hearing held at Los Angeles, California, on January 12, 1950 * * *. That is the complete record of testimony taken in the presence of the respondent, and it is that testimony which is to be used in determining the facts in this case.

· "By Hearing Officer: Inasmuch as both Counsel and Examining Officer have agreed that this matter may be entered into the record at this time and used in arriving at a decision of this case, it will be so entered and marked Exhibit '1' of this present record."

It was then agreed that the stipulation as to· Exhibit "1" included exhibits in former proceedings, numbered: "2", Spanish language document ·as to appellant's birth; "3", Spanish language document as to appellant's record; "4", Record of Arrival; "5", and "6", appellant's sworn statements before Mr. Chandler. Thus, it will be seen that all of the testimony heretofore outlined was received in evidence through stipulation of the parties.

Shortly after the stipulation had been agreed to and accepted by the Hearing Officer, the following proceedings were had:

"By Examining Officer to Hearing Officer:

"Mr. Tong [the Hearing Officer], with your permission, I would like to lodge an additional charge, and I do lodge at this time the following additional charge, which charge, although similar to that stated in the warrant of arrest, appears to be the more specific charge. I charge that the respondent is subject to deportation on the ground:

"The Act of October 16, 1918, as amended, in that he is found to have been after entry a member of the following class, set forth in Section 1 of said Act: An alien who was a member of the ·Communist Party of the United States.[1] ·

---

I. Title 8 U.S.C.A. § 137-3. Deportation of Subversive Aliens.

"(a) Any alien who was at the time of entering the United States, or has been· at any time thereafter, * * * a

member of any one of the classes of aliens enumerated in section 137(2) of this title, shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in

"By Hearing Officer to Counsel:

"Q. Counsel, the Examining Officer has lodged an additional charge against the respondent, that he is found or has been found after entry to be a member of the following class as set forth in Section 1 of the said Act: An alien who is a member of the Communist Party of the United States. In view of the fact that the Examining Officer has lodged this additional charge, I may inform you that you have the right at this time to request a further continuance of this hearing, which may be granted you for a period of five days to enable you to secure evidence to show cause why the respondent should not be deported upon this additional charge lodged by the Examining Officer, and I would like to ask you at this time if you desire a continuance. A. No.

"By Hearing Officer: Very well, Mr. De Lucia, you may proceed.

"By Examining Officer: I have no further questions to the respondent at this time in regard to the deportation charges. The attorney for the respondent has indicated that he desires to present some witnesses.

"By Hearing Officer to Counsel: Counsel, you may cross examine".

It will be noticed that while the old charge remained, i. e., that appellant was a member of or was affiliated with an organ-ization which advocates overthrow of the government by force or violence, appellant was now further charged with having been a member of the Communist Party after his entrance into the United States.

Appellant was then questioned by his own attorney and gave testimony directly in conflict with Mr. Chandler's and Mrs. Mesta's testimony and contrary to the written statements given to Mr. Chandler. Several character witnesses were sworn and gave testimony most favorable to appellant. Appellant's wife was sworn and gave testimony to the effect that her husband only attended lodge and union meetings.

Upon the evidence as above outlined, the warrant of deportation, giving rise to the habeas corpus petition in suit, issued as of October 30, 1951.

■ Appellant contends that the Internal Security Act of 1950, 8 U.S.C. § 137, as amended, 1950, infringed his constitutional rights as guaranteed by the Fifth Amendment, by making membership in the Communist Party a basis for deportation. We hold that Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, and Carlson v. Landon, 1952, 342 U.S. 524, 72 S.Ct. 525, see Carlson v. Landon, 9 Cir., 1950, 186 F.2d 183, and Carlson v. Landon, 9 Cir., 1951, 187 F.2d 991, are in direct opposition to appellant's contention, inasmuch as each of these cases holds that Congress has plenary power

the Immigration Act of February 5, 1917. The provisions of this section shall be applicable to the classes of aliens mentioned in sections 137 to 137–8 of this title, irrespective of the time of their entry into the United States. * * *" Oct. 16, 1918, c. 186, § 4, as added Sept. 23, 1950, c. 1024, Title I, § 22, 64 Stat. 1006.

Title 8 U.S.C.A. § 137. Aliens Excluded; Subversive Aliens.

"Any alien who is a member of any one of the following classes shall be excluded from admission into the United States: * * *

"(2) Aliens who, at any time, shall be or shall have been members of any of the following classes: * * *

"(C) Aliens who are members of or affiliated with (i) the Communist Party of the United States, (ii) any other to-talitarian party of the United States, (iii) the Communist Political Association, (iv) the Communist or other totalitarian party of any State of the United States, of any foreign state, or of any political or geographical subdivision of any foreign state; (v) any section, subsidiary, branch, affiliate, or subdivision of any such association or party; or (vi) the direct predecessors or successors of any such association or party, regardless of what name such group or organization may have used, may now bear, or may hereafter adopt; * * *." Oct. 16, 1918, c. 186, § 1, 40 Stat. 1012; June 5, 1920, c. 251, 41 Stat. 1008; June 28, 1940, c. 439, Title II, § 23(a), 54 Stat. 673; May 25, 1948, c. 338, 62 Stat. 268; Sept. 23, 1950, c. 1024, Title I, § 22, 64 Stat. 1006.

to provide for the expulsion or deportation of aliens.

■ The next point is made that the "evidence is insufficient to sustain the charge." This point is wholly without merit.

■ The next point is that "Appellant was not given a fair and impartial hearing". This point hinges upon the fact that the additional charge was added after appellant had stipulated at the final hearing that the evidence theretofore taken might be received as evidence in the new and final hearing. There is nothing substantial to the point. Appellant was represented by an attorney who knew, of course, that all of such evidence eventually could be introduced and the only gain through refusal to proceed under the amended or new charge and under the stipulation as to the evidence, would be a loss of time. The transcript shows plainly that appellant and his attorney knew what they were doing and fully consented to it.

The next point is "The hearing was not legally conducted and procedure was not followed as required by law." This point is in reality the same as the one just treated, and the same argument is applied to each by appellant.

The law is harsh, but it is not unfair nor beyond the constitutional power of Congress. That the central purpose of the Communist Party is to wreck the United States government is beyond question. Communist teachings are of a secret, deceitful, unmoral nature, and how they can appeal to people of intelligence is an unsolvable enigma. However, so far as the record reveals the status of appellant herein, the problem is not too difficult. Here is a Mexican laborer lured to the Communist cell by dominant members of his labor union. Instead of advantage, this insidious, loathful social disease has brought nothing but calamity to him and his family. Fortunately, the national labor unions, along with other organizations, have effectively condemned the fostering of Communist-inspired disloyalty within their ranks.

There was no error in the district court's order denying the issuance of the writ of habeas corpus.

Affirmed.