James Joseph CRAIN, Appellant,

v.

John P. BOYD, District Director, Immigration and Naturalization Service, Appellee.

No. 14633.

United States Court of Appeals Ninth Circuit.

Aug. 4, 1956.

**928**

John Caughlan, Seattle, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., Frank N. Cushman, William Helsell, Asst. U. S. Attys., Seattle, Wash., for appellee.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

James Joseph Crain or Cryan or Crane, is under an order of deportation from the United States, and his liberty is restrained by John P. Boyd, Director of Immigration and Naturalization.

He is appealing here from the district court's order discharging an order to show cause issued upon his petition for the issuance of the writ of habeas corpus, and dismissing his petition for declaratory and injunctive relief. The petition was filed February 4, 1953, or after the effective date of the Immigration and Naturalization Act of 1952.[1]

■ The district court dismissed the complaint for such review under its ruling that the review other than that requested by the petition for the writ of habeas corpus is "deficient for lack of an indispensable party, the Assistant Commissioner of Immigration and Naturalization Service, or the Attorney General." In this the court erred. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. There was room

for difference of opinion until the decision in the cited case. See the dissents in it.

The order to show cause was discharged and the proceedings dismissed upon the merits after a hearing.

The court issued a show cause order directed to the district director who responded in a pleading in which he denied all but the formal allegations of the petition and affirmatively alleged that his custody of petitioner was, in all respects, in accordance with law. The pleadings as a whole may be taken as the classical pleadings in habeas corpus proceedings for the release of appellant from custody, and also as a complaint and answer in a declaratory judgment action in which affirmative and injunctive action is prayed, under authority of the Administrative Procedure Act.[2]

Although the petition is divided into Count I and Count II, both counts are based upon a single set of facts; and Count I is designed as a petition in habeas corpus, while Count II is designed as a complaint in a declaratory judgment action under the provisions of the Administrative Procedure Act.[3] There is a single prayer by which all phases of relief, within the power of both habeas corpus and declaratory judgment, are sought.

### The Facts

The facts were given the district court by the introduction of the administrative deportation proceedings with reservation of objections. The file of the proceedings show that appellant was examined in 1935 under oath by a district director of Immigration and Naturalization and in the course of the examination he denied having been a Communist. In 1938 he was arrested under a warrant issued by the Department of Labor, Immigration and Naturalization Department, and was charged under the Act of October 16, 1918,[4] as amended by the Act of

---

1. Enacted June 27, 1952, c. 477, 66 Stat. 163, Title 8 U.S.C.A. § 1101 et seq.; effective December 24, 1952.

2. Title 5 U.S.C.A. §§ 1001–1011, June 11, 1946, c. 324, 60 Stat. 237.

3. See note 2, supra.

4. C. 186, 40 Stat. 1012.

June 5, 1920,[5] as an alien member of an organization that advocates or teaches overthrow by force or violence of the Government of the United States. A formal hearing of the charge before an Immigration Inspector was begun on March 15, 1938, and was convened and recessed several times, concluding on July 2, 1938. In the course of the hearings, appellant admitted that he was a member of the Communist Party, but stated,

"* * * as to the overthrow of the Government by force and violence, I don't know anything about that."

The transcript of the 1935 questioning by the district director of Immigration and Naturalization was put in evidence at the 1938 hearing after his arrest. When arrested, appellant was in possession of Communistic literature but stated that he was not familiar with it. During the hearing appellant's Communist Party card was admitted in evidence without objection and with appellant's admission that it was his card. Other documents connecting appellant with the Communist Party were introduced but it is not clear just how these documents were obtained, and their receipt in evidence was objected to as having been obtained illegally. We have excluded them from our consideration.

At the 1938 hearing which was held under legal sanction, appellant stated that he had been a member of the Communist Party in 1935 (contrary to his statements to the district director in 1935, before his arrest in 1938) for a few months but had dropped out and then rejoined.

At the hearing session of April 11, 1938, which was under legal sanction, appellant testified flatly that he was then a Communist:

Question: "How long have you been a member?"

Answer: "About six months, approximately."

(At this juncture, the case of Sumio Madokoro v. Del Guercio, 9 Cir., 1947, 160 F.2d 164, is interesting.) Appellant in the instant case was financial secretary and an organizer of a Communist unit. There followed much evidence as to the Communist Party's intentions toward force or violence to overthrow the Government.

The case seems to have lain dormant from July 2, 1938, to February 25, 1948, when it was reopened before a Presiding Inspector, an officer named pursuant to the change of the Immigration and Naturalization matters from the Department of Labor to the Department of Justice, and these hearings before the Presiding Inspector were concluded on August 3, 1949.

The deportation hearing was reopened on February 13, 1951, in which there was a Hearing Officer, and an Examining Officer under the jurisdiction of the Department of Justice, at which time the following occurred:

Alien's Counsel to Examining Officer: "Is it your intention to introduce any testimony at these proceedings other than the respondent's testimony?"

Answer: "No."

Question: "Is this—this is a reopened hearing which simply represents a continuation of the hearings held in 1938 and 1949?"

Answer: "Yes. The main purpose for the reopening of this hearing is to lodge an additional charge under the Internal Security Act,[6] as you were advised, and the respondent [appellant] was advised in our notification of the hearing on January 9, 1951."

5. C. 251, 41 Stat. 1008, now 8 U.S.C.A. § 1182.

6. Internal Security Act of September 23, 1950, c. 1024, 64 Stat. 987 et seq., amending the Act of October 16, 1918. Repealed June 27, 1952, c. 477, Title IV, § 403(a) (13, 16, 48), 66 Stat. 279, 280, effective December 24, 1952.

At this point appellant's counsel made a lengthy statement,[7] in which he made a motion to dismiss the whole proceeding because of the elapse of time since issuance of the warrant, and because appellant had been a law-abiding person during the years since issuance of the warrant. The motion was denied. Appellant was then asked if subsequent to the spring of 1940 he had ever been a member of the Communist Party of the United States or had been affiliated with or connected in any way with that party during that period, to both of which questions he answered,

"No, I haven't."

Permission was then asked of the Hearing Officer by the Examining Officer to lodge an additional charge, and the following took place:

Hearing Officer: "Permission is granted."

Examining Officer: "I now lodge a new charge and urge that the respondent is subject to deportation under the Act of October 16, 1918, as amended,[8] in that he has been, after entry, a member of the following class set forth in Section 1 of said Act: an alien who was a member of the Communist Party of the United States."

Hearing Officer to Respondent: "This means, Mr. Cryan, that in addition to the charges contained in the warrant of arrest, as well as those subsequently lodged during the course of your previous hearings, it is now being lodged the additional charge under the Internal Security Act of 1950,[9] which amended the Act of 1918, to the effect that you appear to be deportable from the United States because subsequent to your entry you were a member of the Communist Party of the United States. Do you fully understand the nature of this additional lodged charge?"

Answer: "Yes, I understand."

Hearing Officer to Counsel: "Do you wish any additional time within which to prepare a defense in con-

---

7. Transcript p. 399: Counsel: "Well, I would like at this time to have leave of the Hearing Examiner to make a motion with respect to the reopened proceedings, to any phase of the reopened proceedings—that upon the reopening of these proceedings the warrant of arrest and the charges against the petitioner [appellant] be dismissed. First, that they be dismissed; and second, that the recommendation of the Hearing Examiner be that the charges be dismissed for this reason, in addition to those that have heretofore been stated in this hearing; that it now appears that the proceedings in this matter have been going on for approximately thirteen years—it will be exactly thirteen years in one month; that there is no evidence of any kind, nor will there be any introduced in these proceedings, that at any time within the last thirteen years the respondent has engaged in any conduct of any sort or nature whatsoever which could be by anyone considered to be inimical to the United States; in violation of any laws respecting either citizen or alien; or that he has conducted himself other than as a law abiding resident and citizen and for the reason the warrant of arrest should be considered to be officially dead and that the Immigration Service should clear this warrant away so that the respondent may proceed to pursue an application for citizenship in this country. I make that both in the form of a motion to the Service to be a part of the record of this case, and in the form of a motion to the Hearing Examiner that such be recommended in this proceeding, in view of the very long lapse of time between the issuance of the warrant and the present time. I also call attention to the facts that the evidence in this record will indicate—does indicate, that the respondent is now a person of over sixty-five years of age; that he has engaged in honest and useful labor during most of his life, most of which has been spent in the United States, and that it would be unconscionable and would impose a most severe hardship on him were there to be any effort to remove him from this country and place him in another country where he would to all intents and purposes be a stranger and a foreigner with respect to any such country. I make this motion without waiving any other motion or matters which have been raised heretofore in this hearing."

8. See footnote 6, supra.

9. See footnote 6, supra.

nection with this additional lodged charge?"

Answer: "I have—I can only answer that by making an inquiry. My inquiry is this: if it is—is it intended that there will be any factual evidence, testimonial or otherwise, in support of this charge against the respondent?"

Examining Officer: "No, it is my view that the evidence already adduced at the previous hearings is sufficient to support this charge, and basically this charge is similar to the ones which were stated in the warrant of arrest."

Counsel: " * * * but the objection we have is this: * * *."

We shall later mention the objections made by counsel for appellant, and comment thereon.

Upon these facts, modified as we shall note by rulings upon objections, the alien appeals.

### The Appeal

It will be recalled that the deportation statute, as it stood when the warrant issued,[10] provided in effect that an alien who had been or who belonged to or was affiliated with any organization whose purpose was the overthrow of the Government of the United States by force or violence, or the teaching that the Government should be so overthrown, should be deported.

The hearings held upon the warrant for the arrest and the charge for deportation of appellant up to the enactment of the Internal Security Act of 1950,[11] were upon the basis that it must be proven that the organization to which the chargee belonged, etc., was one with the purposes of overthrowing the Government of the United States and/or of teaching that the Government should be overthrown by force or violence. The 1950 Act made an alien deportable if he is or had been a member of the Com-

munist Party. No proof that that Party advocated force or violence, etc., is needed.

Appellant objected to the lodgment of the additional charge, and objected to its consideration upon the ground that it was a different charge than the one upon which the original warrant was issued.

In reality, the purpose of the original and of the additional charge was at all times, one and the same. That is, the deportation of the alien because of his membership in, and affiliation with, the Communist Party as an organization advocating the overthrow of the United States Government by force or violence. The fact was so generally and conclusively known that the Communist Party was advocating force or violence to accomplish such purpose, and was teaching such doctrine, that the Congress did away with the necessity of proving those purposes in the administrative and court hearings. Proof of membership in the Communist Party was enough.

A like additional charge, under like circumstances, was permitted to be lodged in Galvan v. Press, in which the decision of the district court was affirmed by this court, 9 Cir., 1953, 201 F.2d 302, and affirmed by the Supreme Court, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911. In the course of the administrative hearings in that case, after lodgment of the additional charge, all earlier proceedings were made part of the record by stipulation. It is implicit from the Supreme Court's opinion that that court found no jurisdictional or due process objection to the integration of the original and the second charge to constitute an amended charge.

In this regard it is interesting to read the comment in Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 593, 72 S.Ct. 512, 520, 96 L.Ed. 586, in a situation somewhat comparable to the instant case. We quote from page 593 in the margin.[12]

10. Statute cited in footnotes 3 and 4, supra.

11. See footnote 6, supra.

12. "The remaining claim is that this Act conflicts with Art. I, § 9, of the Constitution forbidding *ex post facto* enact-

Appellant argues that the order of deportation is invalid because it was not against the law to be a Communist or to belong to that Party at the time the warrant-charge issued, or during the period in which he was a member of the Communist Party. But in Marcello v. Bonds, 1955, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107, the appellant alien was under order of deportation because he had in the past been convicted of a crime which, at the time of commission and conviction, was not cause for deportation. The order of deportation there was affirmed.

Appellant contends that the situation just outlined violates the *ex post facto* interdiction of the United States Constitution. Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 593, 72 S.Ct. 512, 520, as quoted in note 12, supra, disposes on principle of this contention. Also see Galvan v. Press, 9 Cir., 1953, 201 F.2d 302, affirmed, 1954, 347 U.S. 522, 74 S. Ct. 737, 98 L.Ed. 911; Marcello v. Bonds, 1955, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107.

We shall make no detailed reply to appellant's philosophical discussion to the effect that the Immigration Act of 1952, and the orders under it, violate the Fifth, Seventh, Eighth, and Tenth Amendments to the Constitution of the United States. The argument is ingenious and interesting, but the points stressed have already been adversely ruled upon in many Supreme Court opinions. See Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, supra, and Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, supra.

■ Appellant asserts that no evidence was offered in support of the newly lodged charge. As we have already seen, there was no new evidence introduced connecting appellant with the Communist Party after the additional charge had been lodged. But it was clearly stated at the hearing that reliance was had on appellant's own testimony, unqualifiedly admitting Communist membership at the hearing while the proceedings were being conducted under legal sanction. His point being based upon his contention that the proceeding under the added charge was not in fact a continuation of the proceeding under the original charge, hence, the testimony received prior to the lodgment of the added charge was not competent and relevant to the charge as it stood after such lodgment; but, by what we have already said, the argument is without merit. See "Introduction" to "Legislative History" in "Commentary on the Immigration and Naturalization Act" by Walter M. Besterman, in Title 8 U.S.C.A. at pages 1, 2 et seq.

Appellant is also mistaken in asserting that he was afforded no opportunity to object to the evidence considered in support of the charge, nor to offer testimony as to the additional charge. The record is squarely to the contrary.

■ We hold against appellant's contention that the evidence considered by the trial court was received in violation of currently prevailing standards. Upon this point we assume appellant is referring to the fact that a part of the administrative proceedings were held contrary to the prevailing law as to Hearing Officers. The premise is sound, but the unqualified admission by appellant that he had belonged to the Communist Party, then left it, and again rejoined it,

ments. An impression of retroactivity results from reading as a new and isolated enactment what is actually a continuation of prior legislation.

"During all the years since 1920 Congress has maintained a standing admonition to aliens, on pain of deportation, not to become members of any organization that advocates overthrow of the United States Government by force and violence, a category repeatedly held to in-

clude the Communist Party. These aliens violated that prohibition and incurred liability to deportation. They were not caught unawares by a change of law. There can be no contention that they were not adequately forewarned both that their conduct was prohibited and of its consequences." Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 593, 72 S.Ct. 512, 520, 96 L.Ed. 586.

was made at a hearing which was legally convened and legally staffed.

We find no reversible error in the district court's order of dismissal of the petition for the writ of habeas corpus, nor in the discharge of the order to show cause issued in the habeas corpus proceeding.

Appellant claims that since Count II of his complaint, which he argues constitutes a complaint for declaratory relief, was dismissed upon an erroneous theory, (and there is no dispute as to that) he is entitled to a reversal of the judgment of dismissal and to a full review of the deportation proceedings under authority of the declaratory relief and Administrative Procedure Acts. His claim is based upon the theory that the District Court erred in his Conclusion of Law No. II which is as follows:

"II. Any rights the petitioner may have under the Administrative Procedure Act as now applicable to review of these deportation proceedings are fully reviewable under the petition for habeas corpus.

We do not reach appellant's claim, nor do we intimate any opinion on it, for the reason that appellant's Count II filed as it is in the same action as the habeas corpus proceeding, contains no allegations of procedural irregularities or of denial of rights other than those arising out of Constitutional and statutory interpretations, all of which are properly alleged as issues in the habeas corpus Count and were decided by the Court and we have affirmed the Court's judgment in accord with United States Supreme Court opinions. It is neither legal nor common sense to entertain for a moment, the thought that the *same* judge in the *same* proceeding would interpret the same Constitutional and statutory acts against appellant's contentions in the Habeas Corpus Count and favorable to his contentions in the other. Therefore a remand would be a useless gesture.

Affirmed.

FEE and CHAMBERS, Circuit Judges (concurring).

Judge STEPHENS has written an able opinion in which he finds that all that appellant claimed was within the limits of habeas corpus. That is a proper ground for disposition of the case. However, we hold a second ground for disposition of the case, upon which we also stand, is that, while the 1952 Act imposes some limitations on the scope of review under any type of proceeding, yet in our judgment for the purpose of deportation proceedings the sweep or the search of habeas corpus and complaint for declaratory relief is the same. That is to say, with limitations on both, anything can be presented now in habeas corpus on a deportation review that could be presented by a complaint for declaratory relief.

The foregoing, of course, does not bind Judge STEPHENS.