**Jose Angel OCON, Appellant,**

v.

**Albert Del GUERCIO, Acting Officer in charge of the Immigration and Naturalization Service, Los Angeles, California, Appellee.**

No. 14881.

United States Court of Appeals
Ninth Circuit.

Sept. 26, 1956.

Rehearing Denied Nov. 26, 1956.

178

Irwin Gostin, Hollywood, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Duetz, James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

Jose Angel Ocon appeals from a judgment of the United States District Court in favor of appellee Albert Del Guercio, acting officer in charge of the Immigration and Naturalization Service, Los Angeles, California. Appellant had sought injunctive and declaratory relief against such officer pursuant to the provisions of Section 10 of the Act of June 11, 1946, commonly called the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C.A. § 1009.

Appellant is an alien, a native and citizen of Mexico. He lawfully entered the United States in 1919 and has resided in the United States continually since that time. A warrant for his arrest in deportation proceedings was issued and served on him on October 14, 1953, in which appellant was charged with being an alien who, after entry, had been a member of the Communist Party of the

United States in violation of the Immigration and Nationality Act of 1952.[1]

Deportation hearings were held at Los Angeles, California, on three occasions between October 26, 1953, and November 19, 1953. At these hearings two witnesses testified on behalf of the government as to appellant's membership in the Communist Party of the United States. Upon the advice of counsel, appellant refused to be sworn and refused to answer all questions except two questions relating to counsel by whom he was represented. Appellant cross-examined the witnesses introduced by the government; however, he offered no evidence or witnesses in his own behalf. At no time did appellant claim the privilege against self-incrimination as a ground for his refusal to answer questions.

On December 17, 1953, the Special Inquiry Officer who presided at the hearings rendered his decision ordering that appellant be deported from the United States. The Board of Immigration Appeals dismissed appellant's appeal on June 16, 1954. On July 28, 1954, appellant filed this action in the United States District Court and from a judgment in favor of the appellee this appeal is taken.

Appellant here argues for a reversal on four contentions, to-wit:

(1) The deportation order was rendered invalid because the Special Inquiry Officer who presided at appellant's deportation hearing was not appointed, qualified, or assigned pursuant to the Administrative Procedure Act.

(2) The 1952 Immigration and Nationality Act violates the Constitution of the United States.

(3) The finding that appellant is subject to deportation because he was after entry a member of the Communist Party of the United States is not supported by reasonable, substantial, and probative evidence, as required by the 1952 Immigration and Nationality Act.

(4) The administrative order of deportation was rendered invalid because an inference was drawn from appellant's silence at the deportation hearings.

We note, initially, that we do not find in the record before us any designation of Points on Appeal as required by the rules of this court.[2]

### Special Inquiry Officer Issue

■■■ The contention that the deportation order is invalid because the Special Inquiry Officer was not appointed, qualified, nor assigned pursuant to the Administrative Procedure Act[3] is without merit. It was said in Marcello v. Bonds, 1955, 349 U.S. 302, 305, 75 S. Ct. 757, 759, 99 L.Ed. 1107:

"Petitioner concedes that § 242 (b) of the Immigration Act, authorizing the appointment of a 'special inquiry officer' to preside at the deportation proceedings, does not conflict with the Administrative Procedure Act, since § 7(a) of that Act excepts from its terms officers specially provided for or designated pursuant to other statutes * *."

It is clear that the appointment, qualification, and assignment of special inquiry officers were excepted from the provisions of Section 11 of the Administrative Procedure Act. Couto v. Shaughnessy, 2 Cir., 1955, 218 F.2d 758, 759, certiorari denied 349 U.S. 952, 75 S.Ct. 879, 99 L.Ed. 1276; Marcello v. Ahrens, 5 Cir., 212 F.2d 830, 836; Tsimounis v. Holland, 3 Cir., 228 F.2d 907, 908.

### The Constitutional Question

■■■ We hold the contention that the 1952 Immigration and Nationality Act

---

1. Immigration and Nationality Act of 1952, June 27, 1952, c. 477, 66 Stat. 163, Title 8 U.S.C.A. § 1101 et seq. In particular, Sec. 241(a) (6) of the Immigration and Nationality Act, 66 Stat. 204, Title 8 U.S.C.A. § 1251 (a) (6).

2. See Rule 17(6), Rules of the United States Court of Appeals for the Ninth Circuit.

3. Administrative Procedure Act, June 11, 1946, c. 324, 60 Stat. 237, Title 5 U.S. C.A. §§ 1001–1011.

is violative of the Constitution, is without merit. The challenges to the constitutionality of the statute on the ground that it violates due process, constitutes a Bill of Attainder and an *Ex Post Facto* law, and violates freedom of speech and association have already been rejected. Galvan v. Press, 9 Cir., 1953, 201 F.2d 302, affirmed 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, rehearing denied 348 U.S. 852, 75 S.Ct. 17, 99 L.Ed. 671; Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; United States ex rel. Carson v. Kershner, 6 Cir., 1955, 228 F.2d 142; Crain v. Boyd, 9 Cir., 237 F.2d 927; Carlson v. Landon, 9 Cir., 1950, 186 F.2d 183; Id., 9 Cir., 1951, 187 F.2d 991, affirmed 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547; Marcello v. Bonds, 1955, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107; Ocon v. Landon, 9 Cir., 1954, 218 F.2d 320; Hyun v. Landon, 9 Cir., 1955, 219 F.2d 404.

Although Galvan v. Press involved the Internal Security Act of 1950,[4] the reasoning leading to the decision therein is equally applicable to the 1952 Immigration and Nationality Act.[5] Crain v. Boyd, 9 Cir., 237 F.2d 927.

### Sufficiency of the Evidence

■ A decision of deportability must be supported by "reasonable, substantial, and probative evidence."[6] In determining whether substantial evidence exists to support an order of deportation, a court should not substitute its judgment for that of the immigration authorities.

Two witnesses testified as to appellant's membership in the Communist Party of the United States.

Testimony of Louis Rosser: Louis Rosser testified that he (Rosser) was a member of the Communist Party from 1932 to 1944, during which period he held various positions of leadership in the party. Rosser testified that appellant was present at a meeting in 1939 of the Workers Alliance which was attended *only* by top Communists within the Workers Alliance; that this meeting was planned by Rosser and other Communists and was devoted to the policy and program of the Communist Party being pushed through the Workers Alliance. Rosser also stated that appellant was present at another meeting of the Communist Party in 1939 at which some twelve persons were present and at which appellant spoke to this meeting on the Party's program of mobilizing the unemployed to fight against the war effort; that this meeting was restricted *solely* to members of the Communist Party. Rosser further stated that appellant was present in 1939 at a conference held at Embassy Hall, Los Angeles, California, which conference was restricted *solely* to members of the Communist Party; that the head of each unit within the Party checked the member's name off at the door before the member was admitted. Rosser said he also saw appellant at a meeting of the Party at a private home attended by about eight persons in 1940. The witness said he saw appellant at picnics, mass meetings, and picket lines sponsored by the Communist Party; that he saw appellant at Communist Party headquarters at various times from 1939 to 1942; that he saw appellant at a conference of the Party in the fall of 1942 which was restricted *solely* to members of the Communist Party.

Testimony of Daniel Scarletto: Witness Daniel Scarletto testified that he (Scarletto) was a member of the Communist Party from 1947 to 1952; that he became a member at the suggestion of the Federal Bureau of Investigation; that he was press director of the El Sereno Club of the Communist Party; that he was organization secretary when he was in the Mexican Concentration Club of the Communist Party; and that as organization secretary he handled

4. Internal Security Act of 1950, September 23, 1950, c. 1024, 64 Stat. 987, Title 50 U.S.C.A. § 781 et seq.

5. See note 1.

6. Section 242(b) (4) of the Immigration and Nationality Act of 1952. See note 1.

dues and finances for the club. The witness stated that while a member of the Mexican Concentration Club he was handed a list with appellant's name on it; that he first met appellant at a meeting at the home of Gertrude Stoughton in El Sereno; that about 7 or 8 people were present; that this meeting was restricted *solely* to members of the Communist Party, and that in order to assure that only Party members were in attendance, automobiles were parked several blocks away from the house where the meeting was to be held; and that "we never knew where the meeting was going to be sometimes until an hour or so before it happened, and all the members didn't know at all times where the meeting would be. They were picked up and taken to the meeting." Scarletto also stated that he was present 15 or 20 times at other Party meetings at which appellant was in attendance; and that he had collected Communist Party dues from appellant.

We hold that there is reasonable, substantial, and probative evidence in the record of appellant's membership in the Communist Party of the United States after entry.

### Inference from Silence

The fact that an inference was drawn because appellant was silent at the deportation hearings is not error. The decision of the immigration officer and trial judge was not based solely on the inference but rather was based on the testimony of the two witnesses plus the inference. It is entirely possible that each witness' testimony would have been enough evidence to support the decision. But in stating why a result was reached, all reasons for the decision were stated. This does not mean that should one reason fail, that the entire result or decision will fail.

■ But all the reasons were valid. It has already been held that an inference can be drawn from the refusal of an alien to testify on his own behalf in deportation hearings. Bilokumsky v. Tod, 1923, 263 U.S. 149, 153, 44 S.Ct. 54, 68 L.Ed. 221. And see United States ex rel. Vajtauer v. Commissioner of Immigration, 1927, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; and Kunimori Ohara v. Berkshire, 9 Cir., 1935, 76 F.2d 204; Chan Nom Gee v. United States, 9 Cir., 1932, 57 F.2d 646, 650; Hyun v. Landon, 9 Cir., 1955, 219 F.2d 404, 409; Quilodran-Brau v. Holland, 3 Cir., 1956, 232 F.2d 183.

■ Appellant argues that because, under the 1952 Act, "substantial" evidence is required to be produced by the government, that the alien can wait to hear all the government's evidence and if he (the alien) believes that there has not been presented "substantial" evidence, then he is under no duty to speak and thus, if he does not, no inference can be drawn. Of course, the government must produce substantial and probative evidence. Having done so, the fact-finding body must apply its reasonable inference as to the credibility and effect of such evidence and, as said by the Third Circuit in Quilodran-Brau v. Holland, 3 Cir., 1956, 232 F.2d 183, 185, " * * * His refusal to answer supports an inference against him. And the weight to be given to his silence is for the trial tribunal. * * * "

Judgment affirmed.