UNITED STATES of America ex rel. Salvatore SOLLAZZO, Petitioner,

v.

P. A. ESPERDY, As District Director, Immigration and Naturalization Service, New York, New York, Respondent.

United States District Court
S. D. New York.

Oct. 3, 1960.

Nathan Kestnbaum, New York City, for petitioner.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, Roy Babitt, Sp. U. S. Atty., New York City, of counsel, for respondent.

BICKS, District Judge.

Relator has petitioned for a writ of habeas corpus to inquire into the legality of his detention under a final order of deportation made by the Attorney General of the United States after the dismissal of relator's appeal by the Board of Immigration Appeals. Predicated upon a sworn statement made by the relator on March 12, 1951, that he last entered the United States in 1948 and that in 1933 he had been convicted of attempted robbery, first degree,[1] deportation proceedings were commenced against him. A further ground for deportation alleged was that at the time of the claimed entry in 1948 relator did not present appropriate documentation.

During the pendency of the deportation proceedings, i. e., on July 11, 1951, relator was convicted on a plea of guilty to bribery of a participant in an amateur game under Section 382 of the New York Penal Law as amended.[2] The second conviction arose out of the intercollegiate basketball scandal in 1951. He was sentenced to State Prison for a term of not less than five nor more than ten years on the second count of the thirty count indictment and to a term of not less than three nor more than six years on the 5th count, the sentences to run consecutively.

At the initial hearing in the deportation proceeding relator was advised of the nature thereof, the charges against him, and of his right to be represented by counsel. Upon his application he was granted an adjournment for the purpose of retaining counsel. On the adjourned date he appeared without counsel and replied in the affirmative to a question put to him by the Hearing Officer whether he was "ready and willing to proceed with the hearing at this time without representation". He was advised of his right to offer evidence on his behalf, to cross-examine witnesses against him and to make objections on the record. He stated that he understood that he had those rights.

At the hearing, relator recanted his sworn statement, that he had entered the United States in 1948 and testified that he had made that statement in the hope that it would help him vis-à-vis his immigration status. He testified further that he was an alien, was born in Palermo, Italy on December 31, 1904, came to this country with his parents in 1906;[3] that since said date he has resided continuously within our borders; that he

---

1. The record discloses that this conviction was in the Court of General Sessions, New York County, and that the relator was sentenced to a term of imprisonment of from 7½ to 15 years. Attempted robbery, first degree, is a felony under State Law §§ 2120, 2124, Penal Law, McKinney's Consol.Laws, c. 40.

2. Section 382 of the Penal Law of the State of New York provides in pertinent part, as follows:
"Whoever gives, promises or offers to any * * * amateur * * * basketball player * * * or any player * * * who participates or expects to participate in any * * * amateur game or sport * * *, any valuable thing with intent to influence him to lose or try to lose or cause to be lost or to limit his or his team's margin of victory * * * in a * * * basketball game * * * or any professional or amateur sport, or game, in which such player or participant * * *, is taking part or expects to take part, or has any duty or connection therewith, is guilty of a felony * * *".

3. He identified a certificate of verification of arrival in 1906 as relating to him.

was convicted in 1933 of attempted robbery in the first degree in the Court of General Sessions, New York County, and that he was sentenced to State Prison for a term of 7½ to 15 years. He then testified that in 1951 he was convicted of "the bribery of amateur players in a game of sport", in General Sessions, New York County, and that he was sentenced as above set forth.

Based upon the second conviction and in conformity with applicable regulations, the Hearing Officer lodged an additional charge, to wit, that relator was subject to deportation under the Immigration Act of 1917 by reason of his having been sentenced more than once to a term of a year or more arising out of convictions in this country of crimes involving moral turpitude committed at any time after entry. Relator stated that he understood the additional charge lodged. In response to a query whether he wished to be represented by counsel or to have an adjournment for the purpose of obtaining evidence to meet the additional charge, he responded, "No".

The Hearing Officer thereafter rendered his decision in which he found that the government had not established reentry in 1948; that relator, an alien, had last entered the United States in 1906; and that twice subsequent thereto he had been convicted of crimes involving moral turpitude and sentenced to a year or more on each. He then concluded that relator was not subject to deportation under either of the charges contained in the warrant of arrest predicated upon petitioner's claimed 1948 entry, but that he was deportable under the charge lodged at the hearing, to wit, that he had twice been convicted of crimes involving moral turpitude after entry in 1906 and had been sentenced on each occasion to a term of imprisonment exceeding one year. Relator's appeal to the Board of Immigration appeals was dismissed.

After serving the sentence imposed on his 1951 conviction relator was taken into custody by the respondent for enforcement of the order of deportation.

Relator urges upon this court that (1) the lodging of the charge upon which the order of deportation is based was improper and (2) that the crime of bribery of a participant in an amateur game is not a crime involving moral turpitude within the meaning and intent of Section 19(a) of the Immigration Act of February 5, 1917 as amended, former 8 U.S.C. § 155(a) as amended.[4]

[1, 2] The first contention is without merit. Authority is given the officer conducting the deportation hearing to lodge additional charges against a respondent "if it appears during the hearing that [he] may be deportable on grounds other than or in addition to those stated in the warrant of arrest * * *". See 8 C.F. R. 150.6(1) (1949 ed.); 8 C.F.R. § 151.2 (d) (1950 Pocket Supp.) The propriety of lodging additional charges under the circumstances of this case is supported by ample authority. See, e. g., Galvan v. Press, 9 Cir., 1953, 201 F.2d 302, affirmed 347 U.S. 522, 74 S.Ct. 737, 98 L. Ed. 911; Crain v. Boyd, 9 Cir. 1956, 237 F.2d 927. At the time the additional charge was lodged relator declined an adjournment for the purpose of retaining counsel and preparing to meet it. An examination of the record demonstrates meticulous care was exercised to meet the essential standards of fairness. De Souza v. Barber, 9 Cir. 1959, 263 F.2d 470, 475; Application of Orlando, D.C. N.D.N.Y.1954, 131 F.Supp. 485. Moreover, the essential standards of fairness are not violated unless it leads to a denial of justice, Marcello v. Ahrens, 5 Cir., 1954, 212 F.2d 830, 837, and here the two post-entry convictions are undisputed and undisputable. See, e. g., Ng Sui Wing v. United States, 7 Cir. 1931, 46 F.2d 755, Tillinghast v. Edmead, 1 Cir. 1929, 31 F.2d 81.

Turning to relator's second contention, that the crime of bribery of a participant in an amateur game does not involve moral turpitude, the Court is

4. Now 8 U.S.C.A. § 1251(a) (4).

not unmindful that the touchstone words have not been precisely defined. While the statutory language has been held constitutionally adequate, Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, we are told that "what the Court cannot give, is a basic definition of 'moral turpitude' to guide administrators and lower courts". Id., 341 U.S. at page 233, 71 S.Ct. at page 709 (dissenting opinion by Jackson, J.). The inherent nature of the offense rather than the circumstances surrounding the particular transgression, United States ex rel. Robinson v. Day, 2 Cir. 1931, 51 F.2d 1022, is the determinative element. State characterizations of a particular offense in and of themselves are not conclusive to the application of the immigration laws. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264.

 Although the common law offense of bribery encompassed only the attempt to corruptly influence the actions of judicial officers, legislative codifications and amendments have broadened the scope of the offense and many jurisdictions now include within the orbit of their bribery statutes attempts to corruptly influence participants in athletic endeavors to lose contests or to refrain from expending their best efforts. N.Y.Penal Law, § 382; Ariz.Code Ann.1939, §§ 73–1609 to 73–1620 (1952 Cum.Supp.), A.R.S. §§ 5–101 to 5–113, 5–115; Cal.Penal Code, § 337b; Code of Iowa 1954 § 739.12, I.C.A.; 1951 Maryland Code, Art. 27, § 30; Tenn.Acts 1949, ch. 143, Tenn.Code § 11102.2. While legislative exactments have thus extended the concept of bribery to include other than public officials, the gist of the offense remains the same, i. e., corruptly influencing one in the discharge of his duties, responsibilities, or loyalties, moral and even contractual. See Sec. 439, New York Penal Law; State v. Di Paglia, 1955, 247 Iowa 79, 71 N.W.2d 601, 49 A.L.R.2d 1223; Glickfield v. State, 1953, 203 Md. 400, 101 A.2d 229.

The corrupt intent together with the element of fraud necessarily present in crimes under the genus "bribery"

leaves no room for doubt and compels the conclusion that the crime of bribery of a participant in an amateur game involves moral turpitude. See Jordan v. DeGeorge, supra, and cases therein.

Writ dismissed. So ordered.