**BONG YOUN CHOY and Tung Suck Choy, Plaintiffs,**

**v.**

**Bruce G. BARBER, District Director, Department of Justice, Immigration and Naturalization Service, Defendant.**

**No. 36243.**

United States District Court
N. D. California, S. D.
May 26, 1958.

Walker Lowry, McCutchen, Thomas, Matthew, Griffiths & Greene, San Francisco, Cal., for plaintiffs.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, District Judge.

This is an action to review deportation orders. On February 6, 1957, defendant ordered plaintiffs, who are husband and wife, to be deported for entering the United States in August 1948 as immi-

grants without immigrant's visas [1] and Bong Youn Choy, the husband, to be deported on the additional ground of membership in the Communist Party subsequent to entry.[2] The deportation orders are based on findings by a special inquiry officer of the Immigration and Naturalization Service. The court is asked to determine whether or not these findings are supported by substantial evidence on the record as a whole.

The record shows that Bong Youn Choy was born in Korea in 1914. He first came to the United States in 1938 on a Japanese passport and a student visa. Tung Suck Lee, who was born in Korea in 1916, first entered the United States in 1941 on a Japanese passport and a student visa. She and Choy met and were married in Los Angeles in 1942. They have three American-born children.

From 1938 to 1946, the record shows, Choy studied at various colleges in California, ultimately receiving a Bachelor of Arts and a Master of Arts from the University of California. His major field of study was political science. During World War II, Choy was employed part time by the FBI, the Office of War Information, and the Army, because of his knowledge of the Japanese language.

From 1946 to 1948, according to the record, Choy was employed by the War Department. He was sent to South Korea in June 1946 to work with the American Military Government as a political education specialist. Choy's wife and children joined him in South Korea six months later. In 1948, when his work in South Korea came to an end, Choy and his wife consulted the American Consul in Seoul about returning to the United States. The Consul provided

them with visitor's visas for this purpose.

The Choys returned to the United States in August 1948 and went to Seattle where Choy hoped to attend the University of Washington. In Seattle, Choy renewed his friendship with Harold Sunoo, a Korean whom Choy had known since childhood, and with Kyung Soon Lee, a Korean whom Choy had first met in Los Angeles in 1938 when Lee was a Methodist minister. Sunoo introduced Choy to Johsel Nam Kung, another Korean living in Seattle. The record discloses that these four Koreans and their families visited back and forth once or twice a month from November 1948 to June 1949. On these occasions, the men discussed Communism as it related to Korean politics. The record shows that Choy learned that Sunoo and Lee had joined the Communist Party of the United States. On four or five occasions, the record shows, Choy gave Lee a dollar and, at Lee's request, signed an application for membership in the Communist Party. Choy ceased to meet with the others after May 1949 because he had lost interest in discussing Communism.

In May 1950, the Immigration and Naturalization Service served the Choys with a warrant for their arrest for overstaying their visitor's visas. The Choys were released pending further proceedings. Bong Youn Choy then applied for suspension of deportation. In connection with this application, he gave the following statement at Immigration Headquarters on October 25, 1950 (Government Exhibit 7):

"Q. Have you any reason to believe that Harold Sunoo was ever a Communist, believed in Communism

---

1. The charge against Bong Youn Choy of no immigration visa is under Immigration Act of May 26, 1924, §§ 13, 14, 43 Stat. 161, 8 U.S.C. §§ 201, 213, 214 (1946), repealed by the Act of June 27, 1952, 66 Stat. 279, now 8 U.S.C.A. §§ 1181, 1251, 1252. The charge against Tung Suck Choy of no immigration visa is under Immigration and Nationality Act of 1952, § 241(a) (1), 66 Stat. 204, 8 U.S.C.A. § 1251(a) (1).

2. The charge against Bong Youn Choy of Communist Party membership subsequent to entry is under Act of October 16, 1918, § 1(2), 40 Stat. 1012, as amended, 8 U.S.C. § 137 (1946), repealed by the Act of June 27, 1952, 66 Stat. 279, now 8 U.S.C.A. § 1182(a) (28), and Immigration Act of 1917, § 19, 39 Stat. 889, as amended, 8 U.S.C. § 155 (1946), repealed by the Act of June 27, 1952, 66 Stat. 279, now 8 U.S.C.A. §§ 1251, 1254.

or belonged to the Communist Party? A. I don't have any reason to believe that. (p. 11)

\* \* \* \* \* \*

"Q. Have you any reason to believe that Kyung Soon Lee was ever a Communist, believed in Communism or belonged to the Communist Party? A. I don't have any reason for that.

\* \* \* \* \* \*

"Q. Did Kyung Soon Lee ever ask you to join the Communist Party? A. No, sir. (p. 14)

\* \* \* \* \* \*

"Q. Are you now or have you ever been a member of the Communist Party? A. No. (p. 15)

\* \* \* \* \* \*

"Q. Have you ever been a member of the Communist Party? A. No, sir." (p. 25)

Six months later, at 7:30 in the evening of April 16, 1951, two immigration officers called at the Choys' home and requested Bong Youn Choy to accompany them to Immigration Headquarters for further questioning about his application for suspension of deportation. According to Choy, whose testimony in this matter was not contradicted, one officer at Immigration Headquarters told Choy to write "South Korean Police and American M. P." above a line on a piece of paper and "I have a wife and three American-born children" below the line. Then the officer asked Choy what would happen to him and his family if they were deported to South Korea, and Choy replied that they would be persecuted. After this, Choy stated, he was asked about his membership in the Communist Party. When he denied being a member,

he was handed a written statement by Nam Kung describing the meetings of the four Koreans as Communist Party meetings. Choy testified that he continued to deny being a member of the Communist Party and that he was then taken home by an immigration officer, at about 12:30 a. m., April 17, 1951.[3]

On the way to Choy's home, the immigration officer told Choy that the Immigration Service believed Nam Kung, not Choy, and asked Choy if he wanted to make another statement. Choy said that he did and returned to Immigration Headquarters with the officer. From 1:30 to 3:00 a. m., according to Choy's testimony, he was again questioned about the meetings of the four Koreans. At this point, Government Exhibit 8 shows, Choy admitted Lee's urging him to join the Communist Party many times and signing an application given him by Lee, but stated that he did not understand these meetings to be Communist Party meetings. It is Choy's testimony that he was then permitted to return to his home, at about 3:00 a. m.[4]

Six hours later, at 9:00 a. m., April 17, 1951, Choy voluntarily returned to Immigration Headquarters to give the following statement (Government Exhibit 4):

"Q. Are you now, or have you ever been a member of the Communist Party? A. I have been a member of the Communist Party, but not now.

"Q. When and where did you become a member of the Communist Party? A. I think it was November or December of 1948 at Seattle.

"Q. When did your Communist Party membership terminate? A. I paid about three or four months dues, and that is all I can remember,

---

3. Government Exhibit 3, signed by Choy, is the Immigration Service's record of the questioning from 7:30 p. m. to 12:30 a. m; it does not contain any discussion of the consequences of deportation or direct reference to Nam Kung's written statement.

4. At the end of Choy's statement given between 1:30 and 3:00 a. m., April 17, 1951

(Government Exhibit 8), there appears the following: "Note: The questioning of subject was discontinued at this time, as it was obvious he was not yet ready to make a confession. He appeared at the office voluntarily the next morning, April 17, 1951, and in a sworn statement admitted having joined the Communist Party. Stevens"

and since that time I have not paid dues or attended Communist Party meetings. (p. 1)

\* \* \* \* \* \*

"Q. Do I understand that Harold Sunoo, Johsel Nam Kung, Kyung Soon Lee, were also members of the Communist Party? A. I think so. (p. 3)

\* \* \* \* \* \*

"Q. Is there anything else that you wish to say at this time? A. I think as far as I am concerned, this last statement which I am going to make, is very important to me. I came this morning voluntarily, to testify myself, since we had interview last night. I made really foolish and silly mistake in my entire life, joining the Communist Party, by the influence of my friend whom I believed so much as Minister of church. \* \* \*" (p. 18)

A deportation hearing for Bong Youn Choy was held in Seattle in July 1951. He was represented by counsel for the first time. The record shows that Choy gave the following testimony:

"Q. Have you ever been a member of the Communist Party of the United States? A. Yes, sir.

"Q. When did you join the Communist Party of the United States? A. I don't remember the exact date. I think a late month of 1948, October or November, I am not quite sure.

"Q. Where did you join the Communist Party of the United States? A. City of Seattle.

"Q. Who asked you to join the Communist Party of the United States? A. Name by Kyong Soon Lee.

"Q. In connection with your joining the Communist Party of the United States did you fill out an application card for membership in the Communist Party of the United States? A. Yes, sir.

\* \* \* \* \* \*

"Q. How much were these Communist Party dues which you paid? A. I think it was $1.00 a month."

(Hearing Transcript, pp. 11–12)

The hearing officer concluded that Choy had not overstayed his visitor's visa (the charge in the warrant for Choy's arrest) but that he had entered the United States in August 1948 as an immigrant without an immigrant's visa and that he had been a member of the Communist Party of the United States from November 1948 to June 1949. Choy was ordered deported for illegal entry and Communist Party membership subsequent to entry.

On October 16, 1952, more than one year after the Seattle deportation hearing, Choy gave a statement to two FBI agents in which he said that he had followed Lee's suggestion in joining the Communist Party, that the meetings had been held twice a month from December 1948 to April 1949, and that Choy had paid Lee $1 per month dues but had not been issued a membership card or a dues book. This statement is Government Exhibit 16.

On October 31, 1952, the Board of Immigration Appeals affirmed the order directing Choy to be deported. The Board subsequently granted Choy's application for further hearing, and his deportation hearing was reopened in San Francisco in November 1953, Choy being represented by counsel. At this hearing, the record shows, Choy described his statements to the Immigration Service on April 16 and 17, 1951 (Government Exhibits 3, 4, and 8) as the products of fear and intimidation. Choy testified that, on April 17, 1951, he had believed that deportation was inevitable no matter what he said and that he could avoid perjury charges by agreeing with Nam Kung's description of the meetings as Communist Party meetings.

The record of the reopened deportation hearing also discloses Choy's explanation of his admission of Communist Party membership at the July 1951 deportation hearing. According to Choy, his counsel at the July 1951 hearing had advised him of the risk of perjury prosecution in denying previous admissions. Consequently, Choy had not testified that his

April 17, 1951 admission of membership was false and the result of intimidation.

The record of the reopened hearing further discloses that, after cross-examination, Choy admitted that he had first lied to the Immigration Service on October 25, 1950. This was six months before the "night of intimidation" which allegedly caused Choy to make a false confession.

On November 14, 1955, the special inquiry officer who had presided at the reopened hearing and who had also conducted Tung Suck Choy's deportation hearing in November 1953 ordered both Choys deported. The grounds for deportation were entry into the United States in August 1948 as immigrants without immigrant's visas and, in the case of Bong Youn Choy, the additional ground of membership in the Communist Party subsequent to entry. The special inquiry officer denied both Choys' applications for suspension of deportation but granted the Choys voluntary departure from the United States. On December 31, 1956, the Board of Immigration Appeals affirmed the deportation orders against the Choys, whereupon this action was filed.

■ Deportation orders may be reviewed by an action in a federal district court for a declaratory judgment and injunctive relief. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. The scope of such review is set forth in § 10 of the Administrative Procedure Act, 60 Stat. 243 (1946), 5 U.S.C.A. § 1009. In part, this section provides that the reviewing court shall set aside agency action "unsupported by substantial evidence" and that "in making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party * * *."

■ Reviewing the record as to the Choys' return to the United States from South Korea in 1948, this court concludes that there is substantial evidence to support the finding that the Choys intended to remain in the United States for an indefinite number of years. The record shows that Bong Youn Choy expected to seek work during this time. It is undisputed that the Choys had only visitor's visas when they returned to the United States in 1948. Consequently, the court concludes that the record supports the charge against both plaintiffs of entering as immigrants without immigrant's visas in August 1948. The administrative determination of illegal entry is not contrary to law because the Choys' entry does not come within the exceptional circumstances of Delgadillo v. Carmichael, 1947, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17; Carmichael v. Delaney, 9 Cir., 1948, 170 F.2d 239, or Di Pasquale v. Karnuth, 2 Cir., 1947, 158 F.2d 878.

■ The record also supports the finding that Bong Youn Choy was a member of the Communist Party of the United States from November 1948 to June 1949. Although Choy was questioned at night on April 16, 1951 and one immigration officer pointed out to Choy the consequences of deportation to South Korea, the court is unable to conclude that Bong Youn Choy's admissions of Communist Party membership were coerced. The record shows that Choy is a man of intelligence and education. According to Choy's own testimony, he went to Immigration Headquarters voluntarily on the morning of April 17, 1951 to give his statement admitting membership in the Communist Party. Advised by counsel at the July 1951 deportation hearing, Choy again admitted Communist Party membership. This court may not substitute its own view of the evidence for that of the special inquiry officer who found that Choy had been a member of the Communist Party of the United States from November 1948 to June 1949. See Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ Bong Youn Choy's final contention is that his past membership in the Communist Party is too insubstantial to warrant deportation. However, the court concludes that plaintiff's age, education, experience, and time of membership dis-

tinguish his case from that of the petitioner in Rowoldt v. Perfetto, 1957, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed. 140. Therefore, plaintiff may not avail himself of the relief indicated by the Supreme Court in Rowoldt v. Perfetto despite the hardship which Choy's family must accordingly suffer.

Bong Youn Choy is ineligible to apply for suspension of deportation because of the finding that he was a member of the Communist Party of the United States within the past ten years. Immigration Act of 1917, § 19(c) [5]; Immigration and Nationality Act of 1952, § 244. [6] Tung Suck Choy is eligible for suspension of deportation, but the Board of Immigration Appeals decided that her application should be denied because there is no showing that she could support herself and her children if separated from her husband. This was not an abuse of the Board's discretion. See Jay v. Boyd, 1956, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242.

Plaintiffs' prayer for a declaratory judgment and injunctive relief is hereby denied. Defendant shall prepare findings of fact and conclusions of law in accordance with this opinion. And it is so ordered.

---

5. 39 Stat. 889, as amended, 8 U.S.C. § 155 (1946), repealed by the Act of June 27, 1952, 66 Stat. 279.

