265 F.2d 825
 Willia NIUKKANEN, also known as William Niukkanen, also known as William Albert Mackie, Appellant,
v.
E. D. McALEXANDER, Acting District Director, Immigration and Naturalization Service, Department of Justice, Appellee.
 No. 15990.
 United States Court of Appeals Ninth Circuit.
 April 6, 1959.
 Rehearing Denied May 19, 1959.
 
 Peterson, Pozzi & Lent, Nels Peterson, Gerald H. Robinson, Portland, Or., for appellant.
 C. E. Luckey, U. S. Atty., George E. Juba, Victor E. Harr, Asst. U. S. Attys., Portland, Or., for appellee.
 Before STEPHENS, CHAMBERS and HAMLEY, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 In this habeas corpus proceeding petitioner seeks to invalidate an order for his deportation as an alien who had been a member of the Communist party. After a hearing in the district court, an order was entered dismissing his application. Petitioner appeals, contending that he was not shown to have a "meaningful" association with the Communist party, as that term is used in Rowoldt v. Perfetto, 355 U.S. 115, 120, 78 S.Ct. 180, 2 L.Ed.2d 140. He also argues that the act under which he was ordered deported is unconstitutional.[1]
 
 
 2
 Petitioner, whom we shall call Mackie, is a native and citizen of Finland. He entered the United States in 1909 at the age of ten months, and has resided in this country continuously since that time. Mackie has lived in Portland, Oregon, for about thirty-three years. He had service in the United States Army for three months in 1941, and for three days in 1942. He was honorably discharged for the "convenience of the government." Mackie married an American citizen on June 24, 1945. There are no children as the issue of this marriage, but his wife has a sixteen-year-old son by a former marriage. Mackie's aged father and mother and two sisters also reside in this country.
 
 
 3
 On June 17, 1952, a warrant for the arrest and deportation of Mackie was issued by a district director of the Immigration and Naturalization Service. The warrant was served on September 12, 1952. A hearing was held before a special inquiry officer beginning May 11, 1953, and ending May 21, 1953.
 
 
 4
 On June 30, 1953, the special inquiry officer issued a written decision determining that Mackie was deportable and ordering his deportation. The ground stated for this action was that Mackie had become a member of the Communist party of the United States after entry into this country. The specific finding was that Mackie had been a member of the Communist party during the years 1937-1939.
 
 
 5
 Mackie appealed to the Board of Immigration Appeals. The Board found that the record established the ground of deportability by reasonable, substantial, and probative evidence. The appeal was accordingly dismissed on September 8, 1953. On November 11, 1954, Mackie moved to reopen the deportation proceedings to enable him to apply for suspension of deportation. This motion was denied on November 29, 1954, but when later renewed was granted on December 23, 1954.
 
 
 6
 The reopened hearing was held before a special inquiry officer. This officer, on February 16, 1955, entered a written opinion denying the application for suspension of deportation. Suspension was denied for the reason that Mackie had not made a "clean break" with the Communist party, and there was reason to believe that he was still sympathetic to its principles. The Board of Immigration Appeals affirmed this ruling on May 13, 1955.
 
 
 7
 While this application for suspension of deportation was pending, Mackie, on December 13, 1954, filed a petition in the United States District Court for a writ of habeas corpus. The grounds on which Mackie relied in this petition were that the evidence did not support the order of deportation, and the statute under which the order was entered was unconstitutional. After the order denying suspension of deportation was entered on February 16, 1955, Mackie amended his petition for a writ of habeas corpus to include as an additional ground that the denial of his motion for suspension of deportation was arbitrary and capricious.
 
 
 8
 The district court after hearing rendered a decision denying the application for a writ of habeas corpus. Niukkanen v. Boyd, D.C.D.Or., 148 F.Supp. 106. An order to this effect was entered on March 6, 1956. Mackie appealed to this court and we affirmed. Niukkanen v. Boyd, 241 F.2d 938. Certiorari was denied on December 16, 1957, 355 U.S. 905, 78 S.Ct. 328, 2 L.Ed.2d 259.
 
 
 9
 Rowoldt v. Perfetto, supra, was decided by the Supreme Court on December 9, 1957. On December 27, 1957, Mackie filed a motion before the United States Immigration and Naturalization Service for another hearing on his status as a deportable alien. The ground stated for this motion was that the decision in Rowoldt redefined the evidential and substantial requirements of membership in the Communist party so as to take Mackie out of the class of deportable aliens. This motion was denied by the Board of Immigration Appeals on March 26, 1958.
 
 
 10
 Relying on the same ground and also renewing the contention that the act is unconstitutional, Mackie filed the instant habeas corpus proceeding on April 4, 1958. The petition was denied by the district court, after hearing, on April 14, 1958, and this appeal followed.
 
 
 11
 The contention that the act under which the deportation order was entered is unconstitutional as applied to Mackie is identical with a similar contention made on the previous appeal. It was there disposed of adversely to Mackie and will not be re-examined at this time.[2]
 
 
 12
 We therefore turn to appellant's contention based on the Supreme Court decision in Rowoldt. Mackie argues that it was not proved that he had been a "member" of the Communist party within the meaning of that statutory term, as construed in the Rowoldt decision.
 
 
 13
 In Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 741, 98 L.Ed. 911, the Supreme Court for the first time dealt with the meaning of the term "member" as used in § 22 of the Internal Security Act of 1950. In the course of its opinion the court discussed the kind of a showing which would be insufficient to establish membership and the kind of a showing that would not be required. It further defined the minimum showing that would have to be made by the government.
 
 
 14
 It was held, at least inferentially, that membership would not be established by proof that an alien had accidentally, artificially, or unconsciously in appearance only, joined the Communist party with no real knowledge of its platform and purposes. On the other hand, the court ruled, establishment of membership did not require proof that an alien had joined the Communist party with full appreciation of its purposes and program. The minimum proof required to establish membership, the court held, was that an alien had "joined the Party, aware that he was joining an organization known as the Communist Party which operates as a distinct and active political organization, and that he did so of his own free will."
 
 
 15
 Applying the latter test, the court in Galvan found that under the evidence upon which the hearing officer apparently relied the alien had been a "member" of the Communist party and was therefore deportable. This evidence was to the effect that the alien joined the party on the request of a man he assumed to be an organizer, he attended a number of meetings, he did not apply for citizenship because he feared his party membership would be exposed, and he had been active in, and an officer of, the Spanish Speaking Club, an alleged Communist party unit.
 
 
 16
 In Rowoldt v. Perfetto, supra, the Supreme Court did not purport to modify the principles to be applied in construing the term "member" as announced in Galvan v. Press. It applied those principles to what the court regarded as the different facts of the Rowoldt case. It concluded that the minimum requirements of proof referred to in Galvan had not been met.
 
 
 17
 In this connection the court stated in effect that the evidence in Rowoldt failed to establish "the kind of meaningful association" [355 U.S. 94, 78 S.Ct. 184] required by the 1950 act, as amended. The use of the words "meaningful association" is but a shorthand way of referring to the minimum-proof requirement for establishing membership as set out in Galvan.
 
 
 18
 The precedent value of Rowoldt, then, is not to be derived from an undue emphasis upon the words "meaningful association," as used in that opinion. Rather, it is to be gained by comparing the evidence of membership which was there found to be insufficient with that contained in the record of the case under current consideration.
 
 
 19
 In Rowoldt v. Perfetto the finding of "membership" rested on Rowoldt's own testimony. According to that testimony, Rowoldt joined the Communist party in the spring or summer of 1935, paid dues, and attended meetings. He remained a member until arrested late in 1935 in connection with deportation proceedings. His reason for joining the party was that he regarded the party and the "fight for bread" as going "hand in hand."
 
 
 20
 Rowoldt testified that he had no job at the time and that those around him had the idea that they had to fight for something to eat and for clothes and shelter. He and his associates, Rowoldt testified, were not thinking of "overthrowing anything." In stating that they had to "fight" for something to eat, Rowoldt meant that they had to ask the city, state, and national government for help. The kind of help they wanted was exemplified by the unemployment laws later passed and economic assistance received.
 
 
 21
 Rowoldt's only active work for the party was that of running its bookstore for a short period. He was a salesman in the store but received no compensation. This store was an official outlet for communist literature. Rowoldt testified that he newer advocated change of government by force or violence.
 
 
 22
 In the instant case, unlike Rowoldt, the government produced independent evidence concerning the alien's communist activities, and the latter initially offered no refutation except that of character witnesses. At the original hearing held in May, 1953, Mackie was called to the witness stand by the special inquiry officer and answered general questions concerning his age, residence, place of birth, and the like. The government then called two witnesses.
 
 
 23
 According to their testimony, Mackie was a dues-paying, card-carrying member of the Communist party from at least 1937 until 1939. In the latter year he was dropped from membership for nonpayment of dues. During the period of his membership Mackie attended from thirty to thirty-five meetings of the "Albina Section" of the Communist party in Portland, Oregon. Once or twice a month Mackie went to the office of the "Labor New Dealer," a weekly trade union newspaper, to obtain copies for distribution. This newspaper was Communist controlled, and was considered to be a Communist party "setup."
 
 
 24
 Frequently during these visits to the newspaper office Mackie actively participated in discussions which members of the Communist party held in a back room. These discussions pertained to the policies of the party and the circulation of the newspaper as a party organ. On one occasion Mackie attended a closed party meeting in Aberdeen, Washington, referred to in party circles as a "plenum." This term was used by members of the party in referring to a meeting held for the purpose of reporting the regional activities carried on within the party.
 
 
 25
 Mackie, according to this testimony, was not an ordinary member of the Communist party, but belonged to what members of the party called the "top fraction," except with regard to its waterfront activity.
 
 
 26
 At the close of the government's case, several character witnesses were called to testify in Mackie's behalf. As before noted, however, Mackie declined to take the witness stand himself for the purpose of refuting the testimony of the government witnesses concerning his association with the Communist party.[3] At later hearings on his motion to suspend the order of deportation, and in the district court on this habeas corpus application, Mackie did testify — categorically denying that he had ever been a member of the Communist party.
 
 
 27
 Although appellant attacks the credibility of the government witnesses, the special inquiry officer apparently found their testimony worthy of belief. The Board of Immigration Appeals and the district court found no warrant for reevaluating that testimony, and neither do we. Precedent for adopting this course is to be found in Galvan v. Press, where the Supreme Court deemed it appropriate to accept evidence which the hearing officer had found reliable.
 
 
 28
 In our view the evidence in the instant case more than meets the minimum requirements of proof to establish Communist party membership, as set out in Galvan v. Press, and as referred to in Rowoldt v. Perfetto as "meaningful association." There is no indication here, as in Rowoldt, that the alien joined the party only for "bread and butter" purposes. On the contrary, our appellant, unlike Rowoldt, actively participated in party councils, and was considered to be in a relatively high regional echelon of the party.
 
 
 29
 Mackie's association with the Communist party, in our opinion, was at least as meaningful as that of Galvan in Galvan v. Press.[4] It was much more meaningful than that of Diaz in Diaz v. Barber, 9 Cir., 261 F.2d 300, 301, whom this court characterized as "a small rabbit in the Communist hutch."
 
 
 30
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The warrant of arrest in the deportation proceedings was issued on June 17, 1952. The statute under which the proceedings were instituted was therefore § 22 of the Internal Security Act of 1950, 64 Stat. 987, 1006 (amending the Act of October 16, 1918, 40 Stat. 1012, as amended) as amended by § 1 of the Act of March 28, 1951, 65 Stat. 28. The applicable part of § 22 of the 1950 act prior to the 1951 amendment reads as follows:
 "That any alien who is a member of any one of the following classes shall be excluded from admission into the United States:
 * * * * *
 "(2) Aliens who, at any time, shall be or shall have been members of any of the following classes:
 * * * * *
 "(C) Aliens who are members of or affiliated with (i) the Communist Party of the United States * * *
 * * * * *
 "Sec. 4. (a) Any alien who was at the time of entering the United States, or has been at any time thereafter, * * a member of any one of the classes of aliens enumerated in section 1(2) of this Act, shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917. The provisions of this section shall be applicable to the classes of aliens mentioned in this Act, irrespective of the time of their entry into the United States."
 The 1951 amendment to the above-quoted statute reads as follows:
 "* * * That the Attorney General is hereby authorized and directed to provide by regulations that the terms `members of' and `affiliated with where used in the Act of October 16, 1918, as amended, shall include only membership or affiliation which is or was voluntary, and shall not include membership or affiliation which is or was solely (a) when under sixteen years of age, (b) by operation of law, or (c) for purposes of obtaining employment, food rations, or other essentials of living, and where necessary for such purposes."
 Such a regulation was promulgated by the Attorney General, effective April 4 1951. See 16 Fed.Reg. 2907.
 The amendatory act of March 28, 1951, setting out the above-quoted qualifications upon the meaning of the terms "members of" and "affiliated with" was repealed by the Immigration and Nationality Act of 1952, 66 Stat. 163, 280, effective December 24, 1952. See Schleich v. Butterfield, 6 Cir., 252 F.2d 191, 193. But the substance of the relevant portion of § 22 as originally enacted was incorporated in the Immigration and Nationality Act of 1952, 66 Stat. 163, 205, 8 U.S.C.A., § 1251 (a) (6) (C). See Rowoldt v. Perfetto, supra, 355 U.S. at page 116, 78 S. Ct. at page 181.
 
 
 [2]
 See, also, Ocon v. Guercio, 9 Cir., 237 F.2d 177, 179-180
 
 
 [3]
 The disadvantage to Mackie in his failure to rebut the testimony given by the government witnesses was called to his attention by the special inquiry officer, but Mackie persisted in his refusal to give further testimony
 
 
 [4]
 See, also, Williams v. Mulcahey, 6 Cir., 253 F.2d 709; Wellman v. Butterfield, 6 Cir., 253 F.2d 932; and Bong Youn Choy v. Barber, D.C.N.D.Cal., 162 F. Supp. 629, all of which refer to Rowoldt v. Perfetto, but hold the evidence sufficient to sustain a deportation order