**Hamish Scott MacKAY, Apellant,**

v.

**Eugene D. McALEXANDER, Acting District Director, District 31, Immigration and Naturalization Service, Appellee.**

No. 16148.

United States Court of Appeals

Ninth Circuit.

June 9, 1959.

Rehearing Denied Aug. 21, 1959.

36

Peterson, Pozzi & Lent, Gerald H. Robinson, Nels Peterson, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for appellee.

Before POPE, Chief Judge, and CHAMBERS and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

This is an appeal from a judgment dismissing an application for a writ of habeas corpus. The writ was sought for the purpose of setting aside an order for appellant's deportation and an order denying his application for suspension of deportation. Appellant had been ordered deported as an alien who was a member of the Communist Party of the United States.[1]

1. Pursuant to the act of October 16, 1918, as amended by section 22 of the Sub- versive Activities Control Act of 1950 (Title I of the Internal Security Act of

Appellant challenges the order of deportation on three grounds. The first of these is that the act under which he was ordered deported is unconstitutional as being in violation of article 1, section 9, clause 3, of the Constitution (bill of attainder), and the First and Fifth Amendments.

■ The identical contention was advanced in Niukkanen v. Boyd, 9 Cir., 241 F.2d 938, and rejected by this court. On a subsequent appeal in the same case, Niukkanen v. McAlexander, 9 Cir., 265 F.2d 825, we declined to re-examine the contention. The same constitutional argument was likewise advanced and rejected in Ocon v. Guercio, 9 Cir., 237 F.2d 177, 179–180.

On the authorities cited and those referred to therein, we hold that the act is not unconstitutional in the respects claimed.

■ The second ground on which appellant attacks the order of deportation is predicated upon the recent decision of the Supreme Court in Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140. Appellant argues that there is not here substantial, probative, and reasonable evidence that he had a "meaningful" association with the Communist Party, as the quoted term is used in Rowoldt.

On a previous appeal in an earlier habeas corpus proceeding brought by appellant to test this same deportation order, this court held that the evidence was sufficient to sustain the finding that he became a member of the Communist Party of the United States. MacKay v. Boyd, 9 Cir., 218 F.2d 666.

The former appeal was decided prior to the decision in Rowoldt v. Perfetto. However, in our recent case of Niukkanen v. McAlexander, supra, we had occasion to consider the Rowoldt decision. It was there held that the Supreme Court in Rowoldt did not purport to modify the principles to be applied in construing the term "member" as announced in Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911.[2]

Substantial evidence was introduced in the instant Immigration and Naturalization Service hearing which tended to show that: (1) Appellant was a voluntary member of the Communist Party of the United States from 1934 to at least 1943; (2) he paid dues to the party; (3) he attended a number of closed meetings of the Albina branch of the party in Portland, Oregon; (4) he was selected by the executive board of the Albina branch to attend Communist Party schools and training classes; (5) he received instruction at these schools and classes from James Murphy, the Oregon state organizer, and from a Washington state party official; (6) appellant attended a meeting of the party held for the purpose of electing Murphy to the Oregon State Senate; (7) appellant prevailed upon his wife to join the party; (8) appellant was active in the solicitation of new members by stenciling "Join the Communist Party" on sidewalks; (9) appellant engaged in direct solicitation on behalf of the party and also distributed leaflets put out by the party.

It is our opinion that the evidence summarized above more than meets the minimum requirements of proof to establish Communist Party membership, as set out in Galvan v. Press, and as referred to in Rowoldt v. Perfetto as "meaningful association." There is here no showing, as in Rowoldt, that a "bread and butter" motive drove appellant to join the party.

Appellant challenges the credibility of the witnesses and asserted uncertainties and weaknesses in their testimony. All this was decided against him in MacKay v. Boyd, and will not now be re-examined.

1950), 64 Stat. 1006, 8 U.S.C. § 137, now section 241(a) (6) (C) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a) (6) (C).

2. Galvan v. Press had been decided prior to our decision on MacKay's former appeal.

The third ground relied upon by appellant in attacking the deportation order is that under the evidence received and offered he was not shown to be an alien.

This contention is based upon the following asserted facts which, for present purposes, we accept as true: Appellant's father, James Scott MacKay, was born in Scotland. He was naturalized an American citizen on July 9, 1900, in North Dakota. Appellant's mother was a native-born American citizen. On June 19, 1903, the father and mother were married in the State of North Dakota. They left immediately for Canada and eventually settled near the city of Calgary. The father had not been in Canada prior to June 19, 1903.

On February 8, 1905, the father obtained a certificate of naturalization as a Canadian citizen. This certificate was issued upon the order of the supreme court of the "Northwest Territories of the Dominion of Canada." It is therein recited, among other things, that James S. MacKay "has duly resided in Canada for the period of three years." Appellant was born in Canada on June 10, 1905. The father died in Canada on February 9, 1928, and appellant last entered the United States from Canada on November 28, 1928.

Chapter 77, section 13, Revised Statutes of Canada, 1906, was in effect at the time appellant's father received his certificate of Canadian naturalization. It is therein provided that an alien must reside within Canada for a term of not less than three years before he may take and subscribe to the oath of residence and allegiance which is a prerequisite to naturalization.

Under the assumed facts, appellant's father could not have resided in Canada for a term of three years before receiving his certificate of Canadian naturalization on February 8, 1905. Relying upon this circumstance, appellant argues that his father's Canadian citizenship was void. Then calling attention to a treaty provision which he believes was intended to eliminate "statelessness" under such circumstances,[3] appellant contends that his father was still an American citizen at the time of appellant's birth on June 10, 1905.

■ A decree of naturalization issued by a court in this country is not open to collateral attack in any court in this country by any private individual.[4] Moreover, the government of the United States has long denied the right of a foreign government to impeach a certificate of naturalization issued by an American court. Van Dyne, Citizenship of the United States (1904), page 107. It would appear that considerations of comity and reciprocity would thus preclude American courts from entertaining a collateral attack upon a decree of naturalization entered by a foreign court.

■ The Canadian citizenship of appellant's father was purportedly in good standing at the time of the father's death. His Canadian naturalization had not been questioned, and he and his family, the Canadian courts and government, and all concerned apparently accepted and treated the father as a Canadian citizen. In view of these circumstances and of the legal principles referred to above, we do not believe that the son may now, after the father's death, and in the courts of the United States, and for the purposes indicated, collaterally attack his father's Canadian citizenship.

3. Treaty between the United States and Great Britain dated May 13, 1870, 16 Stat. 775.

4. Tutun v. United States, 270 U.S. 568, 577–578, 46 S.Ct. 425, 70 L.Ed. 738; Johannessen v. United States, 225 U.S. 227, 236, 32 S.Ct. 613, 56 L.Ed. 1066; Spratt v. Spratt, 4 Pet. 393, 29 U.S. 393, 7 L.Ed. 897; Pintsch Compressing Co. v. Bergin, C.C.D.Mass., 84 F. 140. See, also, Campbell v. Gordon, 6 Cranch 176, 10 U.S. 176, 3 L.Ed. 190; Van Dyne, Naturalization in the United States (1907), page 134; Vanfleet, Law of Collateral Attack on Judicial Proceedings (1892), sec. 567; 6 A.L.R. 407, Annotation.

But even if this Canadian decree of naturalization were open to collateral attack in this proceeding, the evidence offered and received is insufficient for impeachment purposes. This evidence shows an inaccuracy in the father's declaration of residence, but nothing more. There is no allegation or proof of intentional fraud. Such a showing would be insufficient to invalidate an American decree of naturalization in an American court.[5] If the showing made would be insufficient to impeach a decree of naturalization entered by an American court, it would seem to be likewise insufficient to warrant impeachment of a similar foreign decree.

Assuming, however, that fraud was shown, it would be intrinsic and not extrinsic fraud. American courts have uniformly held that a foreign judgment cannot be attacked for intrinsic fraud such, for example, as the reception of false testimony. 2 Beale, Conflict of Laws (1935) sec. 440.4, pages 1403–1404.

We are therefore of the opinion that the fact of alienage was sufficiently established.[6]

We conclude that the order of deportation is valid.

Appellant's attack upon the order denying his application for suspension of deportation is based upon two grounds.[7] The first of these is that he was not afforded a fair hearing before the Immigration and Naturalization Service on this application because the hearing officer was the same person who had served as hearing officer in the deportation proceedings.[8]

Appellant had testified in the deportation hearing to the effect that he was not and had never been a member of the Communist Party. The hearing officer apparently disbelieved this testimony, since his order was based upon a finding contrary to appellant's testimony. In his opinion supporting the order denying the application for suspension of deportation, this same hearing officer characterized appellant's testimony at the suspension hearing as "evasive." Appellant wishes us to conclude from this that the hearing officer was biased against appellant at the suspension hearing and revealed such bias in his opinion thereafter entered.

The unfavorable opinion of a party or witness which a hearing officer or a trial judge may entertain as a result of evidence received in a prior and connected hearing involving that individual is not "bias" in the invidious sense. It is in effect a judicially-determined finding which may properly influence such officer or judge in a supplemental proceeding involving the penalty or punishment to be assessed, or the grace to be extended. No unfairness or lack of due process was inherent in the fact that the same hearing officer presided in both proceedings.[9]

The second reason advanced by appellant why the order denying the application for suspension of deportation should be set aside is that such order

---

5. In re McCoppin, Fed.Cas.No.8,713, 5 Sawy. 630; Van Dyne, Citizenship of the United States (1904), page 108.

6. The view just stated makes it unnecessary to consider the following additional arguments advanced by the government in resisting appellant's contention that he was not proved to be an alien: (1) That appellant should have raised this question in the agency proceedings and in the prior habeas corpus proceeding, and may not do so now; and (2) that whether or not appellant's father became a Canadian citizen, his oath of allegiance to Her Majesty, the Queen of the United Kingdom of Great Britain and Ireland, was an act of expatriation which terminated his American citizenship.

7. This application was made pursuant to section 244(a) (5) of the Immigration and Nationality Act, 8 U.S.C.A. § 1254(a) (5).

8. Appropriate objection to the presence of the same presiding officer was made at the outset of the hearing on the application for suspension of deportation.

9. The record indisputably establishes that MacKay was an evasive witness at the suspension hearing.

was arbitrary and capricious, and represents an abuse of discretion.

 The hearing officer held that appellant was statutorily eligible for suspension of deportation. This necessarily included a finding that deportation would result in exceptional and extremely unusual hardship to the alien or to members of his family. But the granting of such relief to one eligible therefor is an act of grace entrusted to the discretion of the Attorney General or his delegate. Jay v. Boyd, 351 U.S. 345, 353, 76 S.Ct. 919, 100 L.Ed. 1242. Judicial review of the exercise of such discretion is confined within extremely narrow limits. See Cakmar v. Hoy, 9 Cir., 265 F.2d 59.

 The hearing officer here determined that in view of the grounds for the deportation order, deportation should not be suspended unless there is

"* * * some exacting evidence in the record that since that time [the time when MacKay became a party member, according to the finding of the hearing officer] the respondent has followed a course of action which would persuade the Attorney General or his delegate that the respondent has actively opposed the doctrine, program, principles and ideology of the Communist Party and that he has not associated, affiliated or contributed time or money to movements sympathetic to the Communist cause. * * *"

This test which the hearing officer determined to apply does not fall under any judicially recognizable interdict. See Cakmar v. Hoy, supra. The reasons which led the hearing officer to determine that appellant had failed to meet that

test are likewise unassailable in a judicial proceeding.[10] See Mahler v. Eby, 264 U.S. 32, 42, 44 S.Ct. 283, 68 L.Ed. 549; Jimenez v. Barber, 9 Cir., 235 F. 2d 922, 252 F.2d 550.

The judgment is affirmed.

---

10. The hearing officer stated in his opinion:

"* * * The respondent and his wife were very effusive in giving information as to their activities in the Oregon Grange, and the Carpenters Union, and the Boy Scouts of America, and other organizations of unquestioned reputation and purpose. However, the record reveals that he and his wife refused to disclose information as to other organizations in which he actively participated. He refused to divulge information about the 'Committee for the Protection of Oregon Foreign Born', as did his wife (record, pages 848, 851, 852, 853-55, 870). In fact, many of the respondent's answers were evasive. He has elected to stand mute and refused to disclose information which is material to a determination as to whether he merits suspension of deportation. * * *"